Ellen Dernier *v.* Rutland Railway, Light & Power Company.

January Term, 1920.

Present:   Watson, C. J., Powers, Taylor, Miles, and Slack, JJ.

Opinion filed May 5, 1920.

*Pleading—Issue Not Raised by Pleadings Cannot Be Relied Upon—Practice Act—Pleading of Affirmative Defence Depends On Practice Act—General Issue With Notice No Longer Exists—General Issue Under Practice Act—Defence of Easement by Prescription Must Be Specially Pleaded—Flooding Land—Right to Flood Land by Prescription—Prescription Begins Only When Right of Action Accrues—Owner Cannot Increase Burden Upon Servient Estate—Life Tenant Confined to Damages to Life Estate—Opinion of Witness Cured by Proof of Qualification on Cross-examination—Evidence That Flooding Was Caused by Sand.*

1. In an action for damages for the flooding of land, evidence admitted upon other issues could not be relied upon to prove

the acquirement of an easement by prescription to flood the land, in the absence of necessary pleadings raising that issue.

2. The Practice Act has abolished the common law distinctions between case and trespass as to matters of pleading; they having been merged, as forms of action, in the action of tort.

3. The question of the necessity of specially pleading affirmative matters in defence no longer depends upon the common-law rules as to the scope of the general issue in different forms of action, but upon the construction of the provisions of the Practice Act relating to the answer.

4. Under the Practice Act, all matters relied upon as an affirmative defence should be specially pleaded unless otherwise provided by the statute.

5. Under the Practice Act, the defendant is required to answer plaintiff's complaint either by a general denial, or by a specific denial of the allegations or some of them, or by a brief and simple statement of the facts relied upon in defence.

6. If the defendant relies upon special matter in defence, he must give notice thereof by proper allegations in his answer, which the plaintiff, in turn, must deny, or avoid by stating the facts relied upon to meet such allegations.

7. There is no longer such a thing as the general issue with notice, nor can the defendant both deny and confess and avoid the allegations of the complaint. As in equity pleadings, the answer should state all the grounds of defence, but it cannot contain inconsistent defences.

8. Under the Practice Act, the general issue does nothing more than to put in issue the material allegations of the declaration.

9. In an action of tort for damages for the flooding of land, the acquirement of an easement by prescription to flood the land could not be shown under the general issue, and, not having been pleaded, it was error to submit the question of easement to the jury.

10. The area of plaintiff's meadow flooded by defendant's obstruction in the river having increased from year to year, the defendant's prescriptive right to the meadow was limited to such area as had been flooded for fifteen years or more before suit was brought.

11. In such case, the prescription would begin to run when the plaintiff's meadow was actually injured by the overflow caused by

defendant's obstruction, as, until that time, no right of action accrued to the plaintiff.

12. The owner of an easement cannot materially increase the burden upon the servient estate, nor impose a new or additional burden thereon.

13. The plaintiff, having only a life estate in the flooded land, could recover only for the injury to the life estate; and evidence of the value of the land before it was overflowed was properly excluded.

14. An objection to the reception of evidence that "the question does not bring it within the evidence in the case," is not sufficiently plain, in pointing to any error, to warrant a reversal.

15. An objection that a witness was not qualified to express his opinion upon the market value of certain property will not be sustained, where his qualification was sufficiently shown during his cross-examination.

16. Evidence tending to show that the flooding of plaintiff's land was caused by sand accumulating in the bed of the river, and not by defendant's obstruction, was admissible.

ACTION OF TORT to recover damages caused by the flooding of land. Pleas, general issue, statute of limitations, and estoppel. Trial by jury at the March Term, 1919, Rutland County, *Butler*, J., presiding. Verdict and judgment for the defendant. The plaintiff excepted. The opinion states the case.

*M. C. Webber* and *J. P. Leamy* for the plaintiff.

It is error for the court to charge on a question not involved by the pleadings and evidence. *Whetherby* v. *Foster*, 5 Vt. 136; *Barron* v. *Fay*, 38 Vt. 705; *French* v. *Ware*, 65 Vt. 338; *Smith* v. *C. V. R. R.*, 80 Vt. 208, 219.

A right acquired by prescription is limited to the extent of the use and enjoyment of it during the period of prescription. *Dunn* v. *Thomas*, 69 Neb. 683, 96 N. W. 142; *Brewer* v. *Ry. Co.*, 191 N. Y. 333; *Horner* v. *Stilwell*, 35 N. J. L. 307; *Baldwin* v. *Calkins*, 10 Wend. 167; *Carlisle* v. *Cooper*, 19 N. J. Eq. 256; *Whelchel* v. *Gainsville R. R.*, 116 Ga. 431, 42 S. E. 776; *O'Brien* v. *Enright*, Ir. Rep. 1 C. L. 718; *Town of Shrewsbury* v. *Brown*, 25 Vt. 197; *Plimpton* v. *Converse*, 44 Vt. 158.

*Lawrence, Lawrence & Stafford* for the defendant.

MILES, J.    This is an action to recover damages alleged to have been caused by the defendant obstructing the flow of water in Castleton River and thereby setting the water back upon the land of the plaintiff.    The alleged obstruction was made upon the defendant's land in the year 1902.

[1]    The first exception insisted upon is the one taken to the charge of the court in submitting to the jury the question of easement.    The plaintiff claimed that the defence of easement was not raised by the pleadings and was unsupported by the evidence, while the defendant claimed that an easement could be shown under the general issue and that there was evidence tending to show that the defendant had acquired an easement by prescription to flood the plaintiff's land.    In support of the latter claim, the defendant relies upon evidence admitted upon other issues in the case.    But the fact that there was evidence in the case tending to show such an easement cannot avail the defendant in the absence of necessary pleadings, for it was to be applied —there being no waiver shown—only as it bore on the issues joined by the parties.    *Poole* v. *Mass. Accident Ins. Co.,* 75 Vt. 85, 53 Atl. 331; *Griffin* v. *Martel,* 77 Vt. 19, 58 Atl. 788; *Probate Court* v. *Enright,* 79 Vt. 416, 65 Atl. 530; *Wells* v. *Boston & Maine R. R.,* 82 Vt. 108, 71 Atl. 1103, 137 A. S. R. 987; *Bradley* v. *Blandin,* 91 Vt. 472, 100 Atl. 920; *Nichols* v. *Lane,* 93 Vt. 87, 106 Atl. 592.    Whether the claimed easement was properly in issue depends upon the scope to be given the pleadings under the Practice Act.

[2, 3]    The complaint is in two counts, both entitled "in a plea of the case."    The second count admittedly is in the form of a declaration in case at common law.    The plaintiff claims that the first count is a count in trespass.    The defendant pleaded a general denial, the statute of limitations, and estoppel.    The claim is made that the issue of an easement could be raised under the general denial, and was so raised during the trial.    It is immaterial whether both counts of the complaint are in the form of counts in case at common law.    The Practice Act has abolished the common-law distinctions between case and trespass as to matters of pleading.    See *Newton* v. *New York, etc., R. Co.,* 56 Conn. 21, 12 Atl. 644.    As forms of action they have been merged in the action of tort.    The necessity or want of necessity of

specially pleading an easement no longer depends upon the common-law rules as to the scope of the general issue in different forms of action, but rather upon the construction to be given to the provisions of the Practice Act relating to the answer.   G. L. 1791, subd. II.

[4-7]   There can be no doubt that the burden of establishing the claimed easement was upon the defendant.   In contemplation of the Practice Act, it is necessary that all matters relied upon as an affirmative defence should be specially pleaded unless otherwise provided by statute.   We said in *Bradley* v. *Blandin,* 92 Vt. 314, 104 Atl. 11, that this was in accordance with the general rule governing pleadings under reform procedure like our Practice Act.   It is the manifest purpose of the act to simplify the pleadings and thus eliminate uncertainty as to the facts in issue.   To that end, the plaintiff is required to set forth in his complaint in brief and simple language the facts relied upon and the relief demanded.   In turn, the defendant is required to answer either by a general denial, or by a specific denial of the allegations of the complaint or some of them, or by a brief and simple statement of the facts relied upon in defence.   The denial, general or specific, of all the allegations of the complaint puts the plaintiff to the proof of every material allegation; but the defendant is not at liberty to raise false issues by this means and cannot safely do so, as he is liable to be penalized in costs for making such a denial without reasonable cause.   G. L. 1792.   His denial should be confined to the facts in dispute.   If he relies upon special matter in defence, he must give notice thereof by proper allegations in his answer, which the plaintiff, in turn, must deny, or avoid by stating the facts relied upon to meet such allegations.   There is no longer such a thing as the general issue with notice, nor can the defendant both deny, and confess and avoid, the allegations of the complaint.   As in equity pleadings, the answer should state all the grounds of defence upon which the defendant relies; but it cannot contain inconsistent defences. *Bradley* v. *Blandin, supra.*

[8, 9]   The only support of the defendant's position afforded by the Practice Act is found in the provision that the general denial "shall, unless otherwise provided, have the same force as a plea of the general issue at common law."   But we do not think that the Legislature thereby intended to restore the general issue with all its common-law incidents, for that would

defeat the spirit and purpose of the act.  On the contrary, we think it was intended to give the general denial the same *office* as the general issue has at common law, which, as a *pleading*, does nothing more than to put in issue the material allegations of the declaration.  No provision for a general denial was embodied in the original act, but it was incorporated in the subsequent revision of the statutes.  The commissioner on revision recommended that "provision be made authorizing a substitute for the plea of the general issue, in view of statutes which refer to that plea and state what may be shown thereunder."  See Report on Revision 179.  In view of the avowed purpose to harmonize the provision of the statutes relating to an answer with those referred to specifying what might be shown under the general issue, it is not to be supposed that the legislative intention was to go further and "graft a wild olive" on the Practice Act.  Interpreting the amendment as intended to give the general denial the force of a traverse preserves the symmetry of the act and accomplishes the purpose relied upon as its justification.  The easement not having been pleaded was not an issue in the case, and the error in submitting it to the jury requires a reversal.

[10-12]  The plaintiff also excepted to the portion of the charge wherein the jury was instructed that, if the defendant had caused damage by backwater under claim of right for more than fifteen years, it raises the presumption of a grant and establishes the right.  This was not a correct statement of the rule applicable to the case in hand.  The evidence relied upon by the defendant as tending to show an easement tended to show that at first only a small part of her land was overflowed, but gradually from year to year the overflow increased up to the time this suit was brought, and that now it covers a large part of her meadow; that in 1904 it had covered only a fourth to a half acre of her land; and that slight injury was done to her meadow the first year or two her land was overflowed.  The most favorable view that can be taken of the evidence relied upon by the defendant is that its tendency was to show a prescriptive right, if any, in the defendant, to only a small part of the plaintiff's land now overflowed as a result of the obstruction placed in the river.

The court should have instructed the jury in a manner limiting the defendant's prescriptive right, if any, to such portion of the plaintiff's land that had been overflowed by the obstruction in the river for fifteen years or more before the suit

was brought, and should not have instructed them in substance that, if the defendant caused the river on its own land to set back upon the land of the plaintiff, and no change was made in the obstruction by the defendant and the damage to the plaintiff was continuous year by year and from time to time, and the obstruction was maintained under a claim of right, openly and notoriously for fifteen years, such an obstruction would ripen into an easement and establish the defendant's right to do just what he did do, and the plaintiff could not recover for any damage, not even for six years. From the charge given, the jury might well understand that, if the obstruction had been maintained for fifteen years without change, the plaintiff could not recover damages for land which the obstruction had caused to be overflowed for only six years next before the suit was brought. This charge made the easement depend upon the length of time the obstruction causing the overflow, had existed, and not upon the time the land was burdened by the overflow. The defendant had the right to obstruct the river on its own land, provided it did no injury to others. The maintenance of such an obstruction, alone, though persisted in for the requisite period, would not result in a prescriptive right to overflow the plaintiff's meadow. It was only when the plaintiff's meadow was actually injured by the overflow that the prescription, if any, began to run. Until a right of action accrues no prescription begins to run, and no right of action accrues until injury is inflicted. *Dutton* v. *Stoughton*, 79 Vt. 361, 65 Atl. 91; *Norton* v. *Valentine*, 14 Vt. 239, 39 A. D. 220. The presumption of an easement arises only where the person against whom the right is claimed could have lawfully interrupted or prevented the exercise of the supposed right. *Lawrie* v. *Silsby*, 76 Vt. 240, 56 Atl. 1106, 104 A. S. R. 927. The extent to which the land is flooded must be substantially the same during the whole period. 40 Cyc. 677. The easement is measured by the extent to which it was exercised at the beginning of the period of the prescription and has since been maintained. 40 Cyc. 678. To acquire a right by prescription the flowage must be confined to substantially the same land for the full period required to perfect it. Jones on Easements, 643; *Bremer* v. *Ry. Co.*, 191 N. Y. 333, 84 N. E. 59; *Horner* v. *Stilwell*, 35 N. J. 307. The extent of the presumed right upon which the easement rests is measured by the right enjoyed during the whole period. *Shrewsbury* v. *Brown*, 25 Vt.

197. The principle which underlies the use of all easements is that the owner thereof cannot materially increase the burden of it upon the servient estate, nor impose a new or additional burden thereon. 9 R. C. L. 790, par 47. This is substantially the rule this Court has followed with reference to a prescriptive right of way. In such case the use must be confined substantially to the same track, entering upon and leaving the defendant's land at substantially the same points. *Plimpton* v. *Converse,* 44 Vt. 158.

The defendant cites several cases to the effect that the use need not be constant in the sense of daily use; that such must necessarily be irregular and dependent upon the season and rainfall. But those cases, though stating the law as applied to the facts in each, are not in point. They refer to the extent of the prescribed and defined use for the entire period, and not to the increased use during the period of prescription.

[13] The plaintiff excepted to the exclusion of her offer to show the value of the flooded land before it was overflowed. The purpose of the offer, as stated by the plaintiff, was to recover the total value of the land. It was conceded that the plaintiff had only a life estate in the overflowed land. The offer was properly excluded. A life tenant can recover only for the injury to the life estate. 16 Cyc. 647.

[14-16] The plaintiff excepted to the court's reception of evidence bearing upon the market value of stock-hay in the vicinity of the plaintiff's farm. The ground of the exception was that "the question does not bring it within the evidence in the case, and that the witness has shown no information about the Dernier lot, except that he knows of it. It does not qualify him to express any value there." What the plaintiff means by the first clause in the ground of his exception is not clear, and we are unable to see the force of it, and, if it points to any error, it is not sufficiently plain to warrant a reversal of the judgment below, if it were not reversed on other grounds. If the witness had not shown sufficient information about the Dernier lot at the time the exception was taken, we think he was sufficiently qualified to testify concerning its value during the cross-examination. The exception to the admission of evidence is without merit. It had a bearing upon the defendant's claim that the obstruction made by itself was not the cause of the setback of the water upon the plaintiff's land; that such setback, if any, was caused by sand

accumulation in the bed of the river, and was without defendant's fault.

*For the errors specified, the case must be sent back for a new trial, and the judgment is reversed and cause remanded.*