### Carole Gulian v. George Gulian

[790 A.2d 1116]

No. 99-207

Present: **Amestoy, C.J., Dooley, Morse and Johnson, JJ., and Dimotsis, D.J., Specially Assigned**

Opinion Filed November 9, 2001
Motion for Reargument Denied December 4, 2001

*Kimberly B. Cheney* of *Cheney, Brock & Saudek, P.C.*, Montpelier, for Plaintiff-Appellant.

*Marsha Smith Meekins* of *Roesler, Whittlesey, Meekins & Amidon*, Burlington, for Defendant-Appellee.

**Johnson, J.** Mother Carole (Gulian) Warner appeals from a divorce judgment of the Washington Family Court. She contends that the trial court abused its discretion in (1) setting the amount of maintenance because the award did not equalize the incomes between her and father George Gulian; and (2) setting the duration of maintenance at nine years, terminating when the youngest child reached the age of majority. We reverse the trial court's award because the court did not separate the maintenance award from the child support award; thus, as a matter of appellate review we cannot determine whether the court did in fact abuse its discretion in awarding maintenance. We also reverse the court's decision to link the duration of the award to the age of the litigants' children because this step implicitly allocated maintenance for child support.

The parties were married in 1983. At the time, mother was 27, had earned her B.A. and was practicing as an accountant full time for approximately $16,000 per year. Father was 34, had earned a Masters, a degree in accounting and was a C.P.A.; he made approximately $32,000 per year. By mutual agreement, mother quit her job to raise a family. The couple had three children, the youngest of whom was born in 1989. The parties were married for almost fifteen years before separating in 1997. Following the separation, mother, then 42, found employment with the State of Vermont Transportation Agency earning approximately $2000 per month. Mother suffers from migraine headaches, which have impeded her ability to work full time. With medication, however, she expects to be able to work 40 hours per week within a year. Father remained employed at National Life Insurance where he has been employed since 1991. His income is approximately $5800 per month and is expected to continue to increase at five percent per year.

The parties' property included a house in Barre, worth approximately $250,000 mortgage-free, as well as substantial assets in various checking, savings, retirement, and brokerage accounts

totaling approximately $250,000. The parties agreed to and the court approved a property division that awarded each party an equal share of these assets. The house was ordered sold, and the proceeds were divided equally.

At trial, the principal issue in dispute was the amount and duration of maintenance payments from father to mother. As background, the trial court stated that spousal maintenance is intended to rectify the inequalities of the parties' financial positions and noted the rehabilitative and compensatory elements of such an award. The court then determined that mother needed $1700 per month for the first year following the divorce and $1500 per month until the year 2007 to support herself and to "ensure that the children are maintained at [the marital] standard of living when living with her." Other than this statement, the court did not explain how it arrived at these figures. According to the court, spousal maintenance is to last until 2007 because that is when the youngest child will turn eighteen.

No child support was awarded because the court determined that the amount recommended by the child support guidelines would be de minimis. For purposes of the child support worksheet, the court determined that each party's monthly income should include the amount of spousal maintenance awarded. Thus, on the child support worksheet, the court calculated mother's monthly income in the first year to be $3699 ($1999 salary plus $1700 maintenance) and father's monthly income to be $4107 ($5807 salary minus $1700 maintenance). Using these figures, the guidelines recommend a support obligation of two dollars.

On appeal, mother argues that both the amount and duration of the maintenance awards were an abuse of discretion. First, mother argues that the court's award treats her differently from similarly situated women. She contends that a maintenance award must equalize the incomes between the parties to compensate her fully for her contribution to the marriage. Second, mother argues that the duration of the award is inadequate. Mother sought a maintenance award that would last fifteen years, equal to the length of the marriage. Terminating maintenance when the youngest child turns eighteen is arbitrary, she believes, because this termination date is based on the children's needs rather than the mother's.

These issues, however, are subsidiary to the fundamental flaw in the trial court's decision, which is that the court did not award any child support. The court's decision on both the amount of

maintenance and the duration of maintenance systematically conflated the inquiries for maintenance and child support. Rather than award mother maintenance and separate child support, the court awarded only maintenance with the result that some of that maintenance must be used for child support. This was error.

## I. Amount of Maintenance

■ In reviewing a maintenance award, the first thing we must do is determine the actual amount awarded. The court employed a process by which it set an amount of "maintenance" without considering whether father would owe any child support under the guidelines with this amount of maintenance. Only then did the court determine that none was required by using this maintenance award when calculating child support.[1] This methodology confounds any attempt to determine the component parts of the award for the purpose of appellate review. More importantly, the court's calculations allow it to reach an unsupportable position — that although mother needs maintenance for her needs and rehabilitation, she has no need for child support to provide adequately for her children.

In not awarding any child support, the court must have presumed that at least some portion of the maintenance award would be available to pay for the children's expenses. In its findings, the court accepted mother's report that her expenses, excluding costs for the children, were approximately $3000 per month. Given that her income was only $2000 per month, some of the $1500 "maintenance" award must have been intended for her children. But maintenance is intended specifically to provide for the spouse's own needs. See 15 V.S.A. § 752(a); *Strauss v. Strauss*, 160 Vt. 335, 338, 628 A.2d 552, 554 (1993) (maintenance is intended to correct the inequalities in income, equalize the standard of living, and compensate homemaker contributions). Child support, in contrast, is governed by a different statutory regime and intended to serve a different purpose. See 15

---

[1] The dissent spends considerable time discussing the fact that our statutes require maintenance be included as income for purposes of calculating child support. See 15 V.S.A. § 653. We do not disagree, nor do we suggest that maintenance should not be included in income according to the statute. Our point is that when the amount of maintenance award results in no child support award according to the guidelines, the amount of maintenance must be adjusted to reflect the fact that maintenance and child support are separate awards that serve different purposes. Conflating the two amounts is error.

V.S.A. §§ 650-658; *Ainsworth v. Ainsworth,* 154 Vt. 103, 106, 574 A.2d 772, 774 (1990) (one purpose of child support guidelines is to provide children with the same approximate standard of living they enjoyed prior to divorce). Indeed, by linking the maintenance award to the age of the children, see discussion *infra,* the court provided further evidence that it intended some, if not all, of the award for child support.

Thus, while the family court has broad discretion in determining the amount of maintenance, see *Delozier v. Delozier,* 161 Vt. 377, 381, 640 A.2d 55, 57 (1994), we must be able to discern this amount before we can determine if there is a reasonable basis to support it. Because the court, in effect, combined child support and maintenance, we simply cannot see how the court exercised its discretion. By rendering its decision unreviewable, the court abused its discretion. See *Remes v. Nordic Group, Inc.,* 169 Vt. 37, 39-40, 726 A.2d 77, 79 (1999). Similarly, we cannot address appellant's argument that the award is inconsistent with our precedent because we do not know the amount of the award.

The difficulty in reviewing the award is illustrated by different attempts to determine the amount of actual maintenance. For example, we can try to figure out how much of the $1500 award is actual maintenance by determining the proper amount of child support owed under the guidelines based on the *pre-award* income of both parties.[2] Applying this means of calculation avoids the trap of double counting an award for both spousal maintenance and child support. Using this method, we can speculate that father owes mother approximately $500 for child support according to the guidelines, leaving approximately $1000 for actual maintenance.[3] At oral argument, however, counsel for mother argued that the award was split approximately equally between child support and maintenance. Regardless of whose numbers are more accurate, we

---

[2] For the remainder of our discussion we will use the $1500 per month figure rather than $1700 because, after the first year of the award, $1500 is the relevant amount.

[3] Our view that in the ordinary case when maintenance is awarded, child support is almost always appropriate is not just theoretical. Indeed, the tax consequences of combining maintenance and child support could be substantial because one source is taxable while the other is not. See 26 U.S.C. § 71(a) (definition of gross income includes maintenance); *id.* § 71(c) (child support income is not taxable).

cannot use them because these calculations amount to fact finding and thus are not appropriate at the appellate level.[4]

## II. Duration of Maintenance

■ Although we are left unsure about whether the amount of maintenance may be within discretion, there is no support for the court's decision terminating maintenance when the parties' youngest child turns 18, or a duration of nine years. Because this duration is apparently based on the needs of the children rather than on the needs of mother, the award is inconsistent with the statutory maintenance scheme. A child support award may end upon the children reaching the age of majority, see *Knowles v. Thompson*, 166 Vt. 414, 422, 697 A.2d 335, 339 (1997), but that temporal event is unrelated to the reason maintenance is awarded.

In determining whether maintenance is appropriate, the court must consider whether one spouse "lacks sufficient income, property, or both . . . to provide for his or her reasonable needs, and is unable to support himself or herself through appropriate employment at the standard of living established during the marriage." 15 V.S.A. § 752(a)(1), (2). The amount and duration of the award are based on factors including the length of marriage, the standard of living during the marriage, the age and physical and emotional condition of the parties, and the skills and earning ability of each party. See *id.* § 752(b).

We have stated there are two principal purposes of maintenance awards: rehabilitation and compensation. First, maintenance can correct the inequalities in the parties' financial positions at the

---

[4] We reserve judgment as to the adequacy of the amount of the award itself; however, if the trial court in fact intended to award approximately $1000 per month in maintenance, this amount would be consistent with our cases in which we have upheld maintenance awards, and therefore within the court's discretion. See *Stickney v. Stickney*, 170 Vt. 547, 549, 742 A.2d 1228, 1232 (1999) (mem.) (affirming $1800 award for twenty-five year marriage where wife had no job skills); *Begins v. Begins*, 168 Vt. 298, 303, 721 A.2d 469, 473-74 (1998) (affirming $1300 award for twenty year marriage where wife was young and had business skills); *Kohut v. Kohut*, 164 Vt. 40, 43, 663 A.2d 942, 944 (1995) (affirming $500 award for thirteen year marriage where wife had earning capacity of $9000 annually); *Clapp v. Clapp*, 163 Vt. 15, 22, 653 A.2d 72, 76 (1994) (affirming $2000 award for twenty year marriage where husband was a wealthy attorney); *Johnson v. Johnson*, 155 Vt. 36, 41, 580 A.2d 503, 506 (1990) (affirming $1500 award for sixteen year marriage where wife could earn $17,000 annually); *Chaker v. Chaker*, 155 Vt. 20, 26, 581 A.2d 737, 740 (1990) (affirming $1000 award for a nine year marriage where wife had $1200 per month earning capacity).

termination of the marriage. See *Klein v. Klein,* 150 Vt. 466, 473, 555 A.2d 382, 386-87 (1988). Rehabilitative maintenance assists the recipient spouse in becoming self-supporting. See *Strauss,* 160 Vt. at 339, 628 A.2d at 554. At the same time, spousal maintenance is designed to keep both spouses in the standard of living established during the marriage, to the extent possible. See *Chaker,* 155 Vt. at 26, 581 A.2d at 740. Second, a maintenance award can look beyond a spouse's support needs and actually attempt to compensate the spouse for contributions made during the marriage. See *Klein,* 150 Vt. at 474, 555 A.2d at 387. Maintenance awards recognize that one spouse's success in the working world is due in part to the sacrifice made by the other spouse, who made the career possible through contributions to family well-being not otherwise recognized in property distributions. See *Stickney,* 170 Vt. at 549, 742 A.2d at 1231.

In light of the purposes of maintenance, the court's decision to tie the duration of mother's award to the age of majority of her youngest children, without more, is an abuse of discretion. There was no evidence that the duration of nine years will either adequately compensate mother for her contributions to the fourteen year marriage or maintain her at the marital standard of living for a sufficient period. See *Strauss,* 160 Vt. at 340, 628 A.2d at 556 (reversing maintenance award that did not consider appropriate factors to determine duration of award). Indeed, the only connection between a duration of nine years and this case is that nine years is the time it will take the youngest child to reach eighteen — the court offered no other explanation for its choice.

In effect, the duration of the award implies that mother deserves compensation and rehabilitation only as long as she is caring for her children on a daily basis — after that, mother's own needs are irrelevant. The duration of the award gives no consideration to mother's contribution to the marriage other than child rearing, or to her right as an individual to financial security. In other words, through its order the court assured that maintenance would have to be used as child support, rather than awarding an independent amount for that purpose.[5]

---

[5] Indeed, according to IRS regulations, the entire award as written could be considered *child support* because the award will be reduced on the occurrence of a contingency related to the children, namely their reaching majority. See 26 U.S.C. § 71(c)(2). In this manner, the court's award creates confusion for the parties' tax filings because the family court is calling the award maintenance and thus deductible by the payor, see *id.* § 215(a),

The dissent sees no error in a disposition that awards the entire amount as maintenance and none as child support. In addition to the problems we have outlined above, such a system undermines the federal-state partnership created to enforce child support orders. Title IV-D of the Social Security Act requires that states receiving certain federal funds create an office for the enforcement of child support (in Vermont, the Office of Child Support), see 42 U.S.C. §§ 601-617, 651-665, and take certain measures to enforce child support orders. See Welfare Reform Act, Pub. L. No. 104-193 (1996). The goal of this program is to empower states to enforce child support orders both within their borders and without, so as to reduce the need for federal welfare to support families that are otherwise owed child support. In conjunction with this system, all fifty states have enacted the Uniform Interstate Family Support Act (UIFSA) (Title 15B, Vermont Statutes). UIFSA coordinates jurisdiction and enforcement of child support and other support orders among the states. Parts of the act specifically address aspects of child support orders as distinct from other support orders. E.g., 15B V.S.A. § 205.

If, as the dissent suggests, our family courts need not distinguish maintenance awards from child support awards, we would be actively dismantling this carefully crafted and complex system created to enforce child support orders. If family courts award only maintenance, they have effectively bypassed the mechanisms by which a child support order can be enforced both in our state and in other states. Systematically, then, the widespread practice of awards with no child support component would work against the federal-state regime created to protect children and their recipient parents from nonpaying parents.

Family courts cannot obviate the need for child support by awarding it as maintenance. Because there should have been a child support award in this case, we must remand to the court to determine a fair allocation.

*Reversed and remanded.*

**Dimotsis, D.J.,** concurring and dissenting. The majority's conclusion, that the family court failed to separate the maintenance

---

while the IRS would likely consider the amount child support and thus not deductible. See *id.* §§ 71(b), (c), 215(b).

award from the child support award, ignores the clear holding of the family court. After performing several child support calculations, the family court ruled that child support was not warranted based on the respective incomes of the parties and the shared parenting arrangement. Disregarding the outcome determined by the child support guidelines, the majority finds error in the apparent result that part of mother's maintenance will be used toward the support of the children. Both parents, however, are obligated to provide support for their children, and such is the policy behind the child support statute. 15 V.S.A. § 650. Maintenance, as income, must be considered when determining child support, 15 V.S.A. § 653(5)(A)(i), and the guidelines anticipate that both parents will contribute part of their respective incomes, from whatever source, to care for their children.

The majority's point "that when the amount of maintenance award results in no child support award according to the guidelines, the amount of maintenance must be adjusted to reflect the fact that maintenance and child support are separate awards that serve different purposes," reveals its misunderstanding of the inter-relationship between child support and maintenance. The majority's confusion about the role of maintenance in child support calculations results in its requiring an additional maintenance hearing after child support has been determined. This additional hearing, coming after the child support hearing, in addition to imposing additional procedural burdens on the family court and litigants, will result in additional maintenance income that will be effectively sheltered from the child support calculation. Accordingly, I dissent from part I of the majority's opinion. Because I agree that the family court abused its discretion in tying the duration of maintenance to the minority of the children, I concur in part II of the opinion.

## I. Amount of Maintenance

The majority concludes that the family court's decision is unreviewable because the majority cannot determine the actual amount of maintenance awarded by the family court. On the contrary, the family court's decision "provide[s] a clear description of what was decided and why." *Kanaan v. Kanaan*, 163 Vt. 402, 415, 659 A.2d 128, 137 (1995). As stated in the order, the family court did not intend to order child support: "In view of the fact that the parties each have the children approximately 50% of the time, and that spousal maintenance awarded until February 1, 2000 approximately

equalizes the parties' income, no specific child support award is entered." Despite this clear indication from the family court, the majority divines that the maintenance award is in fact a combined maintenance and child support award. The cause of the majority's confusion is the family court's methodology of determining an amount of maintenance before calculating whether any child support is owing under the guidelines. The methodology employed by the family court, however, of determining child support based upon post-maintenance incomes of the parties is precisely that contemplated and required by the child support statute and guidelines. 15 V.S.A. § 653.

Before calculating child support, the court must first determine the parties' respective gross incomes. Under our child support statute, "[g]ross income shall include: income from any source, including, but not limited to . . . spousal support actually received." 15 V.S.A. § 653(5)(A)(i). Although the majority suggests that to achieve the purpose of maintenance it must be sheltered from the income available for the support of children, that is not what the child support statute provides. Indeed, although our child support statute originally excluded maintenance from the spouse in the present action as income available for child support, in 1990 the Legislature amended 15 V.S.A. § 653, so that maintenance from the current spouse is included as income. The amended statute allows the family court to consider "the financial resources available to both parents, as required by federal regulation." L. Morgan, Child Support Guidelines: Interpretation and Application § 2.03[e][16], at 2-44 (2000) ("Excluding alimony from consideration is illogical, especially where alimony can be a significant financial resource.").[1]

---

[1] As Representative Ruth Stokes, sponsor and reporter of the amended legislation, explained to the Senate Judiciary Committee, the omission in the original legislation was an oversight.

> We determine gross income by including a whole list of things in the current statute. The issue of alimony was left out of consideration in terms of what constitutes somebody's gross income. In other words if somebody is paying alimony that (inaudible) should not be part of their gross income and if somebody is receiving alimony that clearly should be and this bill corrects what I think was not necessarily the policy decision at the time the guidelines were instituted, but an overlooking of the issue of alimony and this bill proposes to change it in a way that I have described.

Hearing on an Act Related to Child Support before the Senate Judiciary Committee, March 20, 1990, at 9. The following colloquy between then Representative Amy

The majority is troubled by the "unsupportable position — that although mother needs maintenance for her needs and rehabilitation, she has no need for child support to provide adequately for her children." The majority's concern reveals its misunderstanding of the interrelationship between child support and maintenance. Regardless of its purpose, the method for awarding maintenance is through increasing mother's income. 15 V.S.A. § 752(a). That maintenance received by mother should be used for support of the children is anticipated by our child support statute and not inconsistent with our maintenance law. See 15 V.S.A. § 654 (guidelines reflect the parents' available income which shall be used for support of the children); 15 V.S.A. § 654 (guideline amounts must be "based on the concept that children should receive the same proportion of parental income after separation or divorce of their

Davenport and Legislative Counsel Janet Ancel further explains the need to remove from the definition of gross income the exclusion of alimony received from the payee spouse. The colloquy also demonstrates the intended methodology that child support be determined after maintenance is ordered.

> Rep. Davenport. But what happens right now, when you look at people's income, if in the final order one person was supposed to pay the other person alimony or maintenance, that ought to be included as your — if it was me who was supposed to pay you maintenance, it should be included as your income and deducted from my income, if you're trying to compare incomes. And it's because it got left out of the list. If it was in the list and in the list of deductions, then it would work that way.
>
> . . . .
>
> Rep. Davenport: It was really an oversight; it's not anything that's (interrupted)
>
> Ms. Ancel: Yes. That's right.
>
> Rep. Davenport: So this gross income then just doesn't refer to the payee, it refers — doesn't refer to (interrupted)
>
> Rep. Davenport: That's right.
>
> Ms. Ancel: It's both parents.
>
> Rep. Davenport: When you're setting the amount according to the guidelines, you're looking at the gross income of the custodial and the noncustodial parent.
>
> Rep. Crispe: And so this gross income applies to both.
>
> Rep. Davenport: Yes. Right.
>
> Ms. Ancel: Yes, that's right.

Hearing on an Act Related to Child Support before the House Judiciary Committee, January 16, 1990, at 32.

parents as they would receive if their parents were living together in one household"); 15 V.S.A. § 752(a)(2) (court can consider support needed for the care of children when determining whether to award maintenance); 15 V.S.A. § 752(b)(1) (in considering financial resources and parties' ability to meet those resources, expenses associated with caring for a child and amount of child support received can be considered).

The child support statute and guidelines require that parents contribute to the care and support of their children "in proportion to their respective available incomes and in proportion to the amount of time each parent exercises physical custody." 15 V.S.A. § 657(a). The amount of support needed for the care of children is the total support obligation, see 15 V.S.A. § 653, which "reflects the percent of combined available income which parents living in the same household in Vermont ordinarily spend on their children" as determined by the Secretary of Human Services. 15 V.S.A. § 654. See generally *Ainsworth v. Ainsworth*, 154 Vt. 103, 104-05, 574 A.2d 772, 774-75 (1990) (child support guidelines explained). Because mother's income includes her maintenance payments, a portion thereof will necessarily be used towards the support of the children. That the family court articulated this result does not render its decision erroneous.

In this case, the family court intended to equalize the parties' incomes through its maintenance award. After awarding maintenance, the court properly considered mother's and father's post-award incomes and incorporated these figures and the 50/50 parenting arrangement into the child support guidelines. Because there was a disparity of $2.00 in the total support obligation between the parties, the court did not order that one parent pay the other child support. This was not error.

Because of its confusion regarding the interrelationship between maintenance and child support and the role of the former in calculating the latter, the majority misapprehends this dissent. This dissent does not advocate combining maintenance and child support into one award. Rather, absent a deviation request, where maintenance as income is incorporated into a child support calculation and the guidelines determine that no child support is warranted, then the family court should adhere to the child support guidelines and not award child support.

The majority's solution that whenever a maintenance award results in no child support under the guidelines, the amount of maintenance must be adjusted to reflect the fact that maintenance and child support are separate awards that serve different purposes, disregards the child support guideline scheme to impose a vague mandate that will have immediate and adverse consequences on the operation of the family court. Despite the statutory mandate that mother, like father, contribute part of her income for the support of her children, and that the child support guidelines incorporate each parent's respective share of this income towards the support of the children, the majority insists that additional maintenance be awarded to serve the purpose of providing for mother's separate needs. Because this additional maintenance is awarded after the child support calculation, this income will be effectively sheltered for purposes of calculating child support, in contravention of 15 V.S.A. § 653.

The award of additional maintenance will require an additional post-divorce hearing imposing upon litigants and family courts the burden and cost of additional hearing time. The majority offers no guidance as to the procedure to be used by family courts to determine whether and in what amount to adjust the maintenance award. Requiring an additional maintenance hearing after the child support determination will conflict with the purpose and award of a maintenance supplement.[2] A maintenance supplement is awarded to correct the financial disparity between the two households and is part of a child support order. 15 V.S.A. § 661(a). Until it is known what the respective incomes of the households will be, the magistrate can only guess whether and in what amount to award a maintenance supplement.

## II. Conclusion

Rather than create a disruptive remedy for a problem that does not exist, this Court should confine its review to the case at bar and reverse and remand on the basis of the court's tying the duration of maintenance to the age of the children.

---

[2] This conflict will not occur in cases like the one at bar where the parents equally share the physical custody of the children. See *Leas v. Leas*, 169 Vt. 364, 368, 737 A.2d 889, 892 (1999).

I dissent. I am authorized to say that Chief Justice Amestoy joins in this dissent.